FILED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**        00 JUL 19

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ARTHUR LEROY SMITH, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | )   CV99-H-1720-S |
| | ) |
| BELLSOUTH TELECOMMUNICATIONS, | ) |
| INTERNATIONAL, INC. | ) |
| | ) |
| DEFENDANT. | ) |

ENTERED

JUL 19 2000

**MEMORANDUM OF DECISION**

The Court has before it the June 1, 2000 motion of defendant

BellSouth Telecommunications, Inc. ("BST") for summary judgment

and the June 1, 2000 cross-motion of plaintiff Arthur Leroy Smith

("Smith") for partial summary judgment.[1]  Pursuant to the Court's

June 6, 2000 order, the motions for summary judgment were deemed

submitted, without oral argument, on July 5, 2000.

---

[1] Also pending before this Court are the plaintiff's June
14, 2000 motion to strike defendant's affirmative defense and his
June 14, 2000 motion to strike defendant's legitimate non-
discriminatory reason for not rehiring the plaintiff.  The motion
to strike attacks the defendant's affirmative defense of release;
however, given the Court's ruling as to the effect of the release
on the only claims pending, the Court need not decide this
question, and the motion is, therefore, due to be denied as moot.
The motion to strike defendant's non-discriminatory reason for
not rehiring plaintiff simply anticipates the defendant's and the
plaintiff's respective burdens of production at summary judgment.
Although the motion will be denied, the issue raised will be
considered in conjunction with the cross-motions for summary
judgment.

## I. Procedural History

Plaintiff Smith commenced this action on July 2, 1999, by filing a complaint alleging violations of 42 U.S.C. § 1981 and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 <u>et seq.</u> He asserts both disparate treatment and retaliation claims under section 1981, alleging that defendant failed to rehire the plaintiff because of his race and because of his previous actions in complaining of racial discrimination. In addition, plaintiff also claims retaliation under the FMLA. Specifically, plaintiff alleges that BST failed to rehire him in retaliation for having previously taken FMLA leave.

Defendant's May 5, 2000 motion for summary judgment simply asserts that no genuine issue of fact exists and that defendant BST is entitled to judgment as a matter of law. (<u>See</u> Def.'s Mot. Summ. J. 1.) Plaintiff's motion for partial summary judgment asserts that facts supporting liability under the FMLA have been established and that judgment as a matter of law on that claim is proper. (<u>See</u> Pl.'s Mot. Summ. J. 1.) The facts that plaintiff claims establish FMLA liability are that his former supervisor recommended not rehiring the plaintiff because he had taken considerable FMLA leave and that his use of FMLA leave was known to the decision-maker. (<u>See</u> Pl.'s Mot. Summ. J. 2.) Allegedly,

2

the facts also show that this information was held against plaintiff during the decision-making process.  (See Pl.'s Mot. Sum. J. 3.)

Both parties have filed briefs and submitted evidence in support of their respective positions.  On June 1, 2000, plaintiff filed evidence[2] in support of his motion for partial summary judgment and also filed a brief in support of the motion. Defendant also submitted evidence[3] in support of its own motion for summary judgment and filed a supporting brief on June 1, 2000.  On June 19, 2000, plaintiff filed a brief in response to the defendant's motion for summary judgment; the brief was supplemented with additional evidence.[4]  Then, on July 5, 2000,

---

[2] The plaintiff submitted the Rule 30(b)(6) deposition notice to defendant BST, the March 20, 2000 deposition of Tira Knockett, the March 21, 2000 deposition of Jeremy Duncan, the March 21, 2000 deposition of Gary Jordan, the May 1, 2000 deposition of plaintiff Arthur Leroy Smith, the handwritten notes of Tira Knockett, and the defendant's responses to plaintiff's first interrogatories.

[3] The defendant submitted the March 20, 2000 deposition of Tira Knockett, the March 21, 2000 deposition of Jeremy Duncan, the March 21, 2000 deposition of Gary Jordan, the May 1, 2000 deposition of plaintiff Arthur Leroy Smith.

[4] Attached to the brief were an October 22, 1998 release executed by the plaintiff, the June 14, 2000 affidavit of plaintiff Leroy Smith, and the June 12, 2000 affidavit of Marylyn Creer.

defendant filed a response brief to the plaintiff's motion for summary judgment.  Finally, on July 7, 2000, the plaintiff submitted additional evidence[5] in support of its motion for summary judgment and in opposition to the plaintiff's motion for partial summary judgment.

### II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  <u>Id.</u> at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file,

---

[5] Defendant filed the July 5, 2000 declaration of Jeremy Duncan with documents BST 00635 and BST 00569 attached.

4

designate specific facts showing that there is a genuine issue
for trial.  Id. at 324.

The substantive law will identify which facts are material
and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  All reasonable doubts about the facts and
all justifiable inferences are resolved in favor of the non-
movant.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th
Cir. 1993).  A dispute is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson, 477 U.S. at 248.  If the evidence is merely colorable,
or is not significantly probative, summary judgment may be
granted.  Id. at 249.

The method used by the party moving for summary judgment to
discharge its initial burden depends on whether that party bears
the burden of proof on the issue at trial.  See Fitzpatrick, 2
F.3d at 1115-17 (citing United States v. Four Parcels of Real
Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the
moving party bears the burden of proof at trial, then it can only
meet its initial burden on summary judgment by coming forward
with positive evidence demonstrating the absence of a genuine
issue of material fact; i.e. facts that would entitle it to a
directed verdict if not controverted at trial.  Fitzpatrick, 2

5

F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to _affirmatively_ show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  _Fitzpatrick_, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the

6

non-moving party may either point out to the court record
evidence, overlooked or ignored by the movant, sufficient to
withstand a directed verdict, or the non-moving party may come
forward with additional evidence sufficient to withstand a
directed verdict motion at trial based on the alleged evidentiary
deficiency.  However, when responding, the non-movant can no
longer rest on mere allegations, but must set forth evidence of
specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing
Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

Plaintiff was employed by defendant from 1973 until his
resignation in October of 1998.  During part of his tenure with
defendant, plaintiff served as a union shop steward.  His duties
in that position included reporting to his employer fellow
employees' complaints regarding prohibited employment practices,
such as racial  discrimination.  In addition to relaying the
complaints of other employees, over the course of his employment,
the plaintiff also registered his own complaints with defendant
BST and pursued grievances through his union local, including
grievances concerning the crediting of FMLA leave.  Plaintiff's
employment with BST terminated on October 22, 1998, when his
resignation became effective.  On that same day, plaintiff

7

executed a release of all then-existing claims he might have
against BST in consideration of $30,000.00.

In January of 1999, plaintiff applied to defendant for re-
employment.  His application was processed by Tira Knockett, who
discovered that the plaintiff's personnel file contained a
notation not to rehire.  Knockett apparently investigated and
then decided that plaintiff should not be offered new employment
with BST.  That decision not to rehire prompted plaintiff to
initiate the present action, claiming racial discrimination and
retaliation under section 1981 and the FMLA.

### IV. Applicable Substantive Law and Analysis

Plaintiff has attempted to state claims under both 42 U.S.C.
§ 1981 and under the FMLA.  Two theories are advanced under
section 1981:  disparate treatment racial discrimination and
retaliation.  Plaintiff also asserts a pre-employment retaliation
claim under the FMLA, charging that defendant's decision was at
least partially motivated by considerations of his prior use of
FMLA leave.  The defendant, in addition to attacking the
substance of plaintiff's claims, argues that all of plaintiff's
claims are barred by the October 22, 1998 release that plaintiff
executed upon his resignation.  Before addressing the merits of
plaintiff's claims, the Court must first determine the effect and

8

scope of the 1998 release.

**1. The Release**

On October 22, 1998, plaintiff signed a release of all
claims "known or unknown" that he had against defendant as of
that date.  Specifically enumerated in the release were
employment discrimination claims under Title VII and the Age
Discrimination in Employment Act "and any and all claims under
any other federal, state or local statutory or common law
regulation . . . ."  Defendant claims that the October 1998
release encompasses and, therefore, prohibits the claims
plaintiff has presented to this Court.

Ordinarily, an employee may waive any existing statutory
employment discrimination claims against a former employer as
part of a settlement agreement.  See Beadle v. City of Tampa, 42
F.3d 633, 635 (11th Cir. 1993).  To be enforceable, such a
release must be knowing and voluntary.  See id.  The following
factors are considered in determining whether the requisite level
of knowledge and voluntariness existed:  the employee's level of
education and business experience, the clarity of the waiver, the
length of time given the employee to contemplate the release, the
opportunity given the employee to consult with an attorney, the
pressure placed upon the employee to or not to consult with a

lawyer, and the amount and nature of any additional consideration supporting the waiver.  See id.  Close scrutiny is the norm, given the importance of the rights being relinquished.  See Puentes v. Unites Parcel Serv., Inc., 86 F.3d 196, 198 (11th Cir. 1996).  However, in the present matter, no examination is necessary as the claims now asserted by the plaintiff fall outside the October 1998 release.

Although waivers of all accrued claims are permitted, waivers of all future employment discrimination claims are normally prohibited as against sound public policy.  See, e.g., Alexander v. Gardner-Denver Co., 415 U.S. 36, 51 (1973) ("[W]e think it clear that there can be no prospective waiver of an employee's right's under Title VII."); Wagner v. NutraSweet Co., 95 F.3d 527, 533 (7th Cir. 1996) ("Nothing in the March 25, 1991, release suggests that it purported to be prospective, even if such a thing were possible . . . ."); United States v. Allegheny-Ludlum Indus., Inc., 517 F.2d 826, 854 (5th Cir. 1975) ("[T]he release cannot preclude a suit for any form of appropriate relief for subsequent injuries caused by future acts or undertakings the effects of which are equivalent to the otherwise compromised, noncompensable effects of past discrimination covered by the complaint or the decrees.")  In a case such as this where the

10

release did not even purport to have a prospective effect and was, in fact, limited to claims existing on the date of its execution, future claims of discrimination arising from independent, post-release conduct generally are not barred.  <u>See</u> <u>Wagner</u>, 95 F.3d at 533-34.  Still, in certain instances, claims based upon subsequent conduct are prohibited.  When a former employee unsuccessfully seeks reinstatement following an allegedly discriminatory termination and then asserts a claim of discrimination in the failure to rehire premised upon the same discriminatory practices that allegedly resulted in the initial termination, the second claim will be deemed to have arisen at the time of the termination and will be precluded by the release barring claims which existed at the time of termination.  <u>See</u> <u>Blakeney v. Lomas Info. Sys., Inc.</u>, 65 F.3d 482, 485 (5th Cir. 1998); <u>Burnam v. Amoco Container Co.</u>, 755 F.2d 893, 894 (11th Cir. 1985).  That is so because "[a] simple request for reinstatement 'seeks to redress the original termination'" <u>Burnam</u>, 755 F.2d at 894 (quoting Collins v. United Airlines, Inc., 514 F.2d 594, 596 (9th Cir. 1975)).  In essence, the employee in such a situation is merely seeking to revive the waived claim, which will not be permitted.  <u>See</u> <u>Blakeney</u>, 65 F.3d at 485.  Defendant argues that, because the plaintiff had

grievances pending when he left BST's employment, this is a case where a former employee simply seeks to pursue a released claim.

Defendant's position is incorrect for several reasons. First, the cases upon which defendant relies concerned allegedly discriminatory terminations followed by a later request for reinstatement.  In the present matter, plaintiff was not terminated; rather he voluntarily resigned and did not claim that his separation was the result of any illegal discrimination. Furthermore, he did not seek reinstatement but instead made a new application for employment.  Reinstatement and re-application are to be distinguished.  "A discharged employee who seeks to be reinstated is really litigating the unfairness of his original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer. . . . The concept of a discriminatory refusal to hire is a different concept."  NLRB v. Textile Mach. Works, 214 F.2d 929, 932 (3d Cir. 1954).  A refusal to hire is an independent act of discrimination.  See id.  Last, a comparison of the plaintiff's grievances to his present claims shows that they are sufficiently unrelated.  In the present lawsuit, plaintiff asserts that the decision of Knockett, BST's staffing manager, not to hire him was motivated by improper

12

considerations of plaintiff's race and prior complaints of racial discrimination and of his prior exercise of his rights under the FMLA.  Plaintiff's grievances concerned the improper recording of absences by plaintiff's supervisor while certification of the absences as FMLA leave was still pending, possibly to discourage the taking of FMLA leave.  (See Smith Dep. 45-47, 108.)   The plaintiff's present claims address "a new and discrete act of discrimination in the refusal to rehire itself," and are not an attempt to "resurrect the old discriminatory act."  Burnam, 755 F.2d at 894.  Having concluded that the October 1998 release does not bar the plaintiff's current claims against BST, the Court now turns to a consideration of those claims.

**2. Section 1981 Claims**

The plaintiff claims both disparate treatment racial discrimination and retaliation under 42 U.S.C. § 1981.  Section 1981 provides that:

> All persons within the jurisdiction of the United
> States shall have the same right in every State and
> Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens,
> and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981(a) (1994).  The same framework long used to

13

analyze claims under Title VII is also employed in assessing claims of employment discrimination under the section 1981.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes [Title VII and section 1981] have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well.").

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims.  See id. (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989) (ADEA case).  See also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.

14

See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990). Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition). However, direct evidence does not include "stray remarks in the workplace" or "statements by nondecisionmakers" or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (O'Connor, J., concurring) (1989). See also EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990) (quoting Price Waterhouse).

Here, plaintiff has presented only circumstantial evidence of racial discrimination and retaliation under section 1981. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar

15

framework established by the United States Supreme Court in

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817,

36 L. Ed. 2d 668 (1973), and Texas Department of Community

Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d

207 (1981)." Combs, 106 F.3d at 1527.  Under the McDonnell

Douglas and Burdine framework, the plaintiff first has the burden

of establishing a prima facie case of discrimination, which

creates a rebuttable presumption that the employer acted

illegally.  See id. at 1527-28.  The methods of presenting a

prima facie case, as well as the exact elements of the case, are

not fixed; rather they are flexible and depend to a large degree

upon the facts of the particular situation.  See, e.g., Nix v.

WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir.

1984); Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928,

937 (11th Cir. 1983).  In general, a plaintiff establishes a

prima facie case of employment discrimination by showing that he

or she was a qualified member of a protected class and was

subjected to an adverse employment action but that otherwise

similarly situated employees outside the plaintiff's class were

treated dissimilarly.  See McDonnell Douglas, 411 U.S. at 802.

Once the plaintiff has shown a prima facie case and,

thereby, has raised the presumption of discrimination, the burden

16

of production shifts to the employer to proffer a legitimate and nondiscriminatory reason for its actions.  See Combs, 106 F.3d at 1528.  The employer's burden is so light as to be virtually weightless, meaning that the employer need merely put forth a legitimate reason for its actions and need not convince the court that the reason offered was the true, motivating force.  See Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1485 (11th Cir. 1989).  If the employer satisfies that burden by articulating a nondiscriminatory reason, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.  Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  See Combs, 106 F.3d at 1528.  Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Texas Dep't of

Community Affairs v. Burdine, 450 U.S. 248. 253 (1981). Given

that the ultimate burden of persuasion always lies with the

employee, a plaintiff may prevail on an employment discrimination

claim and may also defeat a summary judgement either by proving

that intentional discrimination did indeed motivate the defendant

or by producing sufficient evidence to allow a rational trier of

fact to disbelieve the employer's proffered legitimate reasons,

thus permitting but not compelling the trier of fact to make a

finding of illegal discrimination. See Reeves v. Sanderson

Plumbing Prods., Inc., 120 S. Ct. 2097, 2108-09 (2000); St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v.

Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v.

Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106

F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law);

Hairston v. Gainesville Sun Publ'q Co., 9 F.3d 913, 920-21 (11th

Cir. 1993).

To establish a prima facie case of disparate treatment race

discrimination based upon a failure or refusal to hire, a

plaintiff must show: (1) that he is within a protected class;

(2) that he actually applied for an open position for which he

was qualified; (3) that he was not hired; and (4) that the

position remained unfilled or was filled by someone outside the

plaintiff's class. See Schoenfeld v. Babbitt, 168 F.3d 1257,
1267 (11th Cir. 1999). The framework for analyzing a retaliation
claim is essentially the same McDonnell Douglas three-part
analysis as employed for disparate treatment claims. See Olmsted
v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998)
(discussing elements and burdens of production and proof in a
Title VII retaliation claim). The key differences between the
framework for disparate treatment cases and that for retaliation
cases lie in the elements of the prima facie case. "To establish
a prima facie case of retaliation, [a plaintiff] must show: (1)
she engaged in protected activity; (2) her employer was aware of
that activity; (3) she suffered an adverse employment action; and
(4) there was a causal link between her protected activity and
the adverse employment action." Maniccia v. Brown, 171 F.3d
1364, 1369 (11th Cir. 1999) (citing Little v. United Techs., 103
F.3d 956, 959 (11th Cir. 1997)). Defendant BST argues that
plaintiff cannot demonstrate that he was qualified so as to meet
the prima facie case requirements for race-based discrimination
or the causal link requirement for a prima facie case of
retaliation under section 1981. Plaintiff, naturally, asserts
that he can satisfy the elements of both prima facie cases. This
Court need not resolve this question for it is immaterial, as

19

plaintiff cannot prevail on eiether of his section 1981 claims regardless of whether he satisfies the prima facie elements for racial discrimination and retaliation.

Even assuming that plaintiff could meet the elements of a prima facie case of discrimination or retaliation, his claims would still ultimately fail as the defendant has articulated legitimate and non-discriminatory reasons for its failure to hire the plaintiff, which reasons the plaintiff has failed to rebut. See Combs v. Plantation Patterns, 106 F.3d at 1527-29 (explaining that once an employment discrimination plaintiff establishes a prima facie case, the burden of production then shift to the defendant to articulate legitimate, non-discriminatory reasons for its action, following which the burden of production then shift back to the plaintiff to offer evidence tending to show that the defendant's proffered reasons are really pretext for illegal discrimination).  Defendant has offered a legitimate and non-discriminatory explanation for not rehiring the plaintiff. Although the plaintiff may have been test qualified for employment, his attendance record during his previous employment with BST was deemed unacceptable and, thus, disqualified him from future employment with defendant.  Poor attendance, even when the absences were excused, has been recognized as a legitimate, non-

discriminatory reason in the context of a race discrimination case.  See Gilchrist v. Bolger, 733 F.2d 1551, 1553 (11th Cir. 1984)  True, plaintiff has asserted that his absences were improperly considered in the hiring decision because defendant included FMLA protected leave in assessing his attendance record and that absent that consideration, no legitimate reason existed for defendant's failure to rehire him.  However, the question of the legitimacy of defendant's consideration of plaintiff's prior attendance record is irrelevant when the issue is discrimination under section 1981, as section 1981 is aimed at racial discrimination and retaliation based upon the prior exercise of rights protected under section 1981.  So long as the reason advanced by defendant does not implicate race or retaliation for protected activities under section 1981, then that reason is legitimate for purposes of section 1981 liability.  Cf. id. (noting that Title VII addresses only discrimination based on race, sex, color, religion, or national origin, and that any policy not implicating one of those factors does not violate the statute).  As rebuttal evidence, the plaintiff has offered nothing other than his own subjective beliefs and accusations that race and retaliation were the real reasons that he did not receive an offer of employment.  See Young v. General Foods

21

Corp., 840 F.2d 825, 830 (11th Cir. 1988).  In a case such as this, "[w]here the defendant's justification evidence completely overwhelms any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir. 1987).

## 2. FMLA Claims

Plaintiff also brings a claim under the FMLA premised on retaliation for the prior exercise of plaintiff's rights under the FMLA.  Defendant has questioned whether such a retaliation claim is cognizable when brought by a job applicant rather than by an employee.  The matter seems to be unsettled in this circuit; the case law from outside the circuit appears equally sparse; and the parties' treatment of this important preliminary issue is little more than cursory.  Given the potentially dispositive nature of this issue, the Court will require the parties to rebrief the issues relating to plaintiff's FMLA claim and will reserve judgment on this claim pending receipt of new briefs.

In conclusion, this Court finds that no material issues of fact remain as to the plaintiff's section 1981 claims and that defendant BST is entitled to judgment as a matter of law on those

claims.  Therefore, summary judgment is due defendant on

plaintiff's section 1981 claims.  As for the plaintiff's FMLA

retaliation claim, the Court is unable to make a finding based

upon the briefs currently before it; the parties will be required

to file additional briefs on this issue.  A separate order in

conformity with this opinion will be entered.


DONE this _19th_ day of JULY, 2000.


SENIOR UNITED STATES DISTRICT JUDGE